Cox *v.* Howell.

Cox    *v.*    Howell.

*(Knoxville.    November    16,    1901.)*

1. INJUNCTION.  *Maintainable to prevent diversion of water from mill, when.*

The owner of a mill propelled by the water of a flowing stream can protect, by injunction, the water of the stream against diversion and diminution, hurtful to the operation of his mill, by an upper riparian proprietor for the purpose of generating steam for a planing plant, where the stream, in its natural flow and quantity, is insufficient for the operation of the mill of the lower proprietor, especially where the two proprietors had jointly owned and established the mill and the upper proprietor had, before erecting his planing plant, sold and conveyed his interest in the mill to the lower proprietor.  In such case the upper proprietor is estopped to divert and diminish the water of the stream for such purpose to the injury of the lower proprietor, both by the general principles of law applicable to the use of water of flowing streams by riparian proprietors and by the covenants of his deeds. (*Post, pp. 130-144.*)

Cases cited: Posey *v.* James, 7 Lea, 98; Holbert *v.* Eden, 5 Lea, 204; Wall *v.* Cloud, 3 Hum., 182.

2. WATER.  *Rights of riparian owners to use running streams, de fined.*

The owner of land, across or over which a stream of water flows, has a right to have it flow over his land in its natural channel, without unreasonable detention, undiminished in quantity, and unimpaired in quality, except so far as is inseparable from a reasonable use of the water of the stream for the ordinary and useful purposes of life by those above him on the stream. Every riparian proprietor has an absolute right to the use of the water of a stream for domestic purposes, such as the support of life in man and beast.  He may likewise use it for purposes of irrigation and operation of machinery, provided that can be done without injurious results to the lower proprietor. (*Post, pp. 133-144.*)

Cox *v.* Howell.

3. SAME.  *Same.*
   What is a reasonable and permissible use or diversion of the
   water of a running stream, with respect to the rights of ripa-
   rian proprietors, depends upon the size and character of the
   stream, the purpose of the use or diversion, and, as a general
   proposition, upon the circumstances of the particular case.
   (*Post, p. 137.*)

FROM    WASHINGTON.

Appeal from the Chancery Court of Washington
County.   JNO. P. SMITH, Ch.

KIRKPATRICK, WILLIAMS & BOWMAN for Cox.

A. R. JOHNSON and NEWTON HACKER for
Howell.

WILKES, J.   This is a bill to enjoin defend-
ants from diverting the water from complainant's
mill, and to recover damages for its diversion.
The Chancellor granted the relief, and the Court
of Chancery Appeals affirmed his decree, and the
defendants have appealed and assigned errors.

The facts necessary to be mentioned are set
out in the finding of the Court of Chancery Ap-
peals by Wilson, J., in his opinion, as follows:

"1. Complainant and Gresham, pending the par-
tition proceedings in the County Court of Wash-

ington County, to sell and partition the lands of W. C. Hale, deceased, having become brothers-in-law by marrying each a daughter of said Hale, agreed in writing (a copy of which appears heretofore in this opinion), to purchase, as tenants in common, the Hale homestead tract of land, provided it could be procured at the sale thereof for $5,000, and to operate it jointly until it was paid for. This tract had a grist and saw-mill on it, situated near its northern boundary. This agreement was carried out. They also agreed to divide the land between themselves, except the mill, mill-site, etc., of a half acre, and the improvements on it in a certain way, and this was done. The mill was situated on a weak stream of water, which flows through the center of this place its whole length, the place being substantially in the shape of a parallelogram. The partition line agreed on kept the center of this stream until it got some distance below the mill, when it deflected, leaving all the stream on the west side of the partition line. In this division Gresham took the west side of the agreed partition line, and complainant the east side, so that after the partition line deflected, all the stream from thence south, until it left the tract, was on the parcel owned by Gresham. This partition did not include the mill, and mill-site of half an acre. They continued to operate the mill, as joint owners, until February 6, 1897, when Gresham, his

wife joining with him, conveyed his half interest in the mill to complainant by the deed, a copy of which appears heretofore in this opinion. After this, and a short while before this bill was filed, Gresham proceeded to erect a steam planing and saw-mill on his land, near the stream flowing through it, and which furnished water to propel the mill of complainant, in which Gresham formerly owned a half interest, and which interest he sold to complainant, as before stated. He tapped the stream with a three-fourths inch pipe, in order to pass water to the boiler of his planing mill to generate steam to operate it. The stream is a weak one, and does not furnish water at all times sufficient to run the mill of complainant, and from the proof, two-fifths of the time the flow of water in it is insufficient to run the mill of complainant. These are the essential facts. Under them, has the defendant the right to divert any water from the stream, to be consumed in generating steam to run his planing mill, and to the extent the water is thus consumed lessen the flow of water to the mill of complainant?

"The general proposition of law, that the owner of land across or over which a stream of water flows, has a right to have it flow over the land in its natural channel, undiminished in quantity and unimpaired in quality, except so far as is inseparable from a reasonable use of the water

from the stream for the ordinary and useful pur-
poses of life by those above him on the stream,
is well established by an almost unbroken current
of authority. *Gardner* v. *Newburgh* (58 Johns.
Ch.), 7 Am. Dec., 527; *Davis* v. *Getchell* (Me.),
79 Am. Dec., 638-45, note and cases cited; *Du-
mont* v. *Kellog* (Mich.), 18 Am. Rep., 102;
*Hays* v. *Waldren* (N. H.), 84 Am. Dec., 105;
*Dilling* v. *Murray* (Ind.), 63 Am. Dec., 285;
*Canal Co.* v. *Water Power Co.,* 48 Am. St.
Rep., 937, note and cases cited.

"He has, however, no property in the water it-
self, but simply the usufruct of it, as it passes
over or across his land. *Eddy* v. *Simpson* (Cal.),
58 Am. Dec., 408; *Stein* v. *Burden* (Ala.), 65
Am. Dec., 394; *Clinton* v. *Meyers* (N. Y.), 7
Am. Rep., 373.

"Pollock, B., in *Kinset* v. *Great R. R. Co.,*
L. R., 23 Ch. Div., 569, in reference to this
aspect of the subject, uses this language:

" 'The law of England, and, so far as I am
aware, the same may be said of the law of any
other country, has never acknowledged the right to
flowing water in a person over whose land it
flows, in the same sense and manner as the
possessional right to land. It has been spoken
of in different ways, as a thing that is a right
*publici juris,* a thing that is a natural right,
and by other expressions of that kind. But in
the result, it comes to this: that it is a right

of the same character as the right to the pure flow of air, a right of such a nature that the person who enjoys it cannot at any time fix upon a particular portion of the water to which he is entitled. He cannot say of any particular pint or globule of water, that that pint or globule is his. He can only say, that he is entitled to the flow of that water in its accustomed manner, both as to quantity and as to quality.'

"The relative right of upper and lower proprietors is, that the upper has no right to divert, or unreasonably retard the natural flow to the lower, and the lower has no right to turn it back upon the upper, to their injury. *Thurber* v. *Martin,* 61 Am. Dec., 468; *Miller* v. *Miller,* (Pa.), 49 Am. Dec., 545; *Tillotson* v. *Smith* N. H.), 64 Am. Dec., 355; *Tenn. Coal, Iron & R. R. Co.* v. *Hill* (Ala.), 46 Am. St. Rep., 48, and cases cited; *Canal Co.* v. *Water Power Co.,* 48 Am. St. Rep., 937, cases.

"Judge Story, in *Webb* v. *Portland Mfg. Co.,* 3 Sum., 189, uses this language: 'The true doctrine is laid down by Sir John Leech in regard to riparian proprietors.' And his opinion has since been deliberately adopted by the King's Bench. 'Prima facie,' says that learned Judge, 'the proprietor of each bank of a stream is the proprietor of half the land covered by the stream, but there is no property in the water. Every proprietor has an equal right to use the water

which flows in the stream, and consequently, no proprietor can have the right to use the water to the prejudice of any other proprietor, without the consent of the other proprietors, who may be affected by his operations. No proprietor can either diminish the quantity of water which would otherwise descend to the proprietors below, nor throw the water back upon the proprietors above. Every proprietor, who claims a right, either to throw the water back above him, or to diminish the quantity of water which is to descend below, must, in order to maintain his claim, either prove an actual grant or license from the proprietors affected by his operation, or must prove an uninterrupted enjoyment of twenty years, which term of twenty years is now adopted upon a principle of general convenience, as affording conclusive presumption of a grant.'

"Each proprietor is, therefore, entitled to the use of the water of the stream as it flows through his land, and an appropriation of a specific portion of it by one proprietor, to the exclusion of a lower proprietor, is an invasion of a right of the lower, which the latter can invoke the injunctive power of the court of equity to prevent. *Clinton* v. *Meyers* (N. Y.), 7 Am. Rep., 373, and authorities cited.

"But the principle just announced does not conflict with the rule, that every riparian owner has a right to use primarily the water of a flowing

stream for domestic purposes, for the support of life, in man and beast, and, in addition, in a proper and reasonable way, for the irrigation of his land, or for the operation of his machinery on his land, provided the volume of water in the stream warrants this use above domestic uses. *Evans* v. *Merriweather* (Ill.), 28 Am. Dec., 106; *Elliott* v. *R. R. Co.* (Mass.), 57 Am. Dec., 85; *Billing* v. *Murray* (Ind.), 63 Am. Dec., 385; *Tillotson* v. *Smith* (N. H.), 64 Am. Dec., 355; *Dumont* v. *Kellog* (Mich.), 18 Am. Rep., 102.

"What is a reasonable and permissible diversion of the water of a running stream, with respect to the rights of riparian proprietors, depends upon the size and character of the stream, the purpose for which the diversion is made, and, as a general proposition, upon the circumstances of the particular case. *Elliotl* v. *R. R. Co.,* 57 Am. Dec., 191; *Davis* v. *Winslow,* 81 Am. Dec., 573; *Hays* v. *Waldren,* 83 Am. Dec., 105; *Pool* v. *Lewis,* 5 Am. Rep., 526; *Dumont* v. *Kellog,* 18 Am. Rep., 102; *Jones* v. *Adams,* 3 Am. St. Rep., 788.

"In *Garwood* v. *R. R. Co.,* 83 N. Y., 400; S. C., 38 Am. Rep., 452, it was ruled that an upper riparian owner on a stream has no right to divert the water by pipes and reservoirs for the use of his locomotive engines, to the detriment of a lower proprietor, a mill owner, and that the mill owner might enjoin such diversion.

"Danforth, J., in the course of his opinion, after stating that the rights of the parties were to be determined upon the law applicable to upper and lower riparian owners, said: 'Each has the right to the ordinary use of the water flowing past his land, that is, *ad lavandum et ad polandum,* for domestic purposes and his cattle, although some portion may be thereby exhausted, and this is so without regard to the effect which such use may have upon the lower owner. The water may also be used for irrigation, or for manufacturing purposes. The cases cited by appellant are abundant to show this. But in each one, the irrigation is of the land to which the right to use the water is an incident, or with which the manufacturing . purpose is connected. But even this privilege cannot be exercised, if thereby the lawful use of the water by a lower proprietor is interfered with to his injury.' Citing *Minor* v. *Gilmour,* 12 Moore, P. C., 156, and *Tyler* v. *Wilkinson,* 4 Mason, 397.

"Further on in his opinion, he says: 'But learned counsel of the appellant contend that, inasmuch as both plaintiff and defendant require the water for artificial, as distinguished from natural, uses—the one as a power for mill purposes, and the other as material or the means of producing power for railroad purposes—it may be obstructed by the defendant, even to the other's injury, although he concedes the rule would be different if

the plaintiff required the water for natural purposes. It is difficult to see how such a distinction can be maintained. If the defendant required the water for natural purposes, there might be some reason of giving it priority.'

"While the principles above stated are sustained by the cases, the further rule is well established, that, though each riparian proprietor is entitled to the steady and usual flow of the water, still this right must, in some circumstances, within proper limitations, be taken with modification. So, it has been held, that it is not unlawful to detain the water for a reasonable time, if it is detained in good faith for a useful purpose, and with as little interference with the rights of other proprietors, as is practicable. *Pool* v. *Lewis,* 5 Am. Rep., 526; *Harris* v. *Allen,* 81 Am. Dec., 715; *Casebeer* v. *Mowery,* 93 Am. Dec., 766.

"Likewise, it had been held in a number of cases, that priority of occupation in the use of water by a mill owner invests him with no right to say, that those above or below on the stream have no right to turn the water to useful or beneficial purposes. *Platt* v. *Johnson,* 8 Am. Dec., 233; *Thurber* v. *Martin,* 62 Am. Dec., 468; *Davis* v. *Getchell,* 79 Am. Dec., 636; *Springfield* v. *Harris,* 81 Am. Dec., 715.

"But it has been also ruled, in a number of cases, that a proprietor first using the water of a stream for beneficial purposes, has a right to

water sufficient to run his mill, even though the effect be in a reasonable use of the water to destroy the value of a lower privilege, or to prevent an upper proprietor from placing a dam and mill on his land. *Hatch* v. *Dwight*, 9 Am. Dec., 145; *Thurber* v. *Martin*, 62 Am. Dec., 468; *Chandler* v. *Howland*, 66 Am. Dec., 487; *Carey* v. *Daniels*, 41 Am. Dec., 532.

"*Wetmore* v. *White*, 2 Am. Dec., 323, is closely analagous to the present case in its facts, and at least in the principle it announces as applicable to this case. In that case, Wetmore filed a bill and prayed for an injunction to restrain the defendants to it from molesting or disturbing him in the enjoyment of mills, mill-dam and the water of the Saghquate Creek, and that he might be quieted in his possession and enjoyment of it, and for such other and further relief as the Court should direct. It appears, from the opinion in the case, that in 1788, Wetmore was seized of the lands on the east side of Saghquate Creek, together with an equal moiety of the creek itself, and that White was seized of the lands on the west side of the creek, together with the other moiety of the creek, and being thus seized, they, with one Beardsley, built a grist mill and saw-mill upon the land of Wetmore, and that a canal was dug for the purpose of diverting some of the water of the creek to these mills. The parties continued to operate the

mills jointly and enjoy the profits thereof, according to their respective proportion therein, for some three years, when Wetmore purchased the shares of his co-partner in the mill. His purchase of the share of White was in parol. After this, White claimed the right to divert water formerly used in the operation of the mill.

"Thompson, J., with these facts before him, stated that the following questions arose: 1. Whether appellant, Wetmore, ever acquired any right to the waters of Saghquate Creek for the use of the mill. 2. If so, whether that was a temporary right. 3. Whether, the purchase being by parol, the defendants can avail themselves of the statutes of frauds to avoid them. In a lengthy opinion, Judge Thompson ruled, in effect, as embodied in the head note to it, that: 'If a stream of water be owned by two persons, whose lands are on opposite sides of it, and they agree to erect mills on the lands of one, and turn the whole stream to the mill, it will be an appropriation of the water to the mill, and whether held jointly or in common, a release of the interest of one tenant in the mill will carry with it his right to the water.' He further rules, that, 'by a sale of the mills, the water of the raceway will pass as an incident of the property.' He also ruled in the case, that payment of the consideration to White, possession, and the making

of improvements, took the case out of the statute of frauds.

"That case has received criticism in respect to its holding on the statute of frauds, but, so far as we have discovered, has been subjected to none as to the other points above ruled in it. The principle announced in it, and the other general principles stated in that opinion, so far as we are advised, are not in conflict with any Tennessee case.

"*Posey, McClure et al* v. *H. M. James et al.,* 7 Lea, 98, cited by appellant, does not, as we think, militate against Wetmore v. White, 2 Am. Dec., *supra,* nor does it sustain the contention of appellant, as applied to the facts of this case. Judge Turney simply announced, in the course of his opinion, that it was settled in this State, that the owners of land upon navigable streams have title to ordinary low water mark, but if not navigable, to the center. The case really had to do with alluvial accretions to the bank of a river and extending into it.

"In *Holbert and Wife* v. *Eden et al.,* 5 Lea, 204, Judge Cooper, speaking for the Court, said: 'If a water course be navigable, in the legal sense, the soil covered by the water, as well as the use of the stream, belongs to the public. If it be navigable only in the ordinary sense, the ownership of the bed of the stream is in the riparian owners, and the public have an easement

therein, for the purpose of transportation and commercial intercourse. If the stream be so shallow as to be unfit for such purposes of transportation and commerce, both the right of property and use are in the owners of the adjoining land.'

"These cases, as we view them, do not, in any controlling sense, touch upon the right of one riparian proprietor to divert the water of a flowing stream to the injury of the business of another riparian proprietor, and especially of the business of the other he had aided in establishing, and thereafter parted with his interest in it."

We think this is a correct exposition of the law applicable, and have embodied and adopted it because of the able, elaborate and painstaking citation of authorities, as the opinion of this Court.

In addition, we cite the case of *Wall & Co.* v. *Cloud,* 3 Hum., 182, as applicable to the present one, and as laying down some rules entirely in point in this case, and entirely in accord with *Wetmore* v. *White,* 2 Am. Dec., 323. It was there held that everything necessary to the full enjoyment of a right passes with the purchase of the right, and therefore, if a place for the abutment of a dam is sold, the right to use the water collected by the dam passes with the land, and if the right be plain and evident,

a suit at law to establish it is not a prerequisite to the bill to enjoin the interference with such right.

When the defendant sold to complainant his right and interest in the mill, it carried with it all the easements and appurtenances necessary to its operation as they existed when the sale was made, and the defendant has no legal or equitable right to disturb the flow and supply of water as they then existed; especially is this so when the use of all the water is required to operate the mill, except such as might be used for domestic purposes, as conceded in the bill, and as laid down by the Court of Chancery Appeals.

It fully appears that any diminution of the flow of the water for purpose of operating other machinery, would lessen the value of the mill and prove to that extent an injury to the complainant.

By the express, as well as implied, covenants in defendant's deed, he could not be permitted to do this.

The decree of the Court of Chancery Appeals is affirmed, and the decree of that Court is made the decree of this Court.