**TALLASSEE POWER CO. v. CLARK et al.**

**CLARK et al. v. TALLASSEE POWER CO.**

**Nos. 6659, 7017.**

Circuit Court of Appeals, Sixth Circuit.

May 16, 1935.

H. A. Goddard, of Maryville, Tenn., and R. R. Kramer, of Knoxville, Tenn. (M. H. Gamble, of Maryville, Tenn., Lindsay, Young & Atkins, of Knoxville, Tenn., and Gamble, Goddard & Gamble and Kramer & Kramer, all of Maryville, Tenn., on the brief), for Tallassee Power Co.

L. M. G. Baker, of Knoxville, Tenn. (T. W. Peace, of Madisonville, Tenn., on the brief), for Clarks.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The suit below was originally instituted by the appellees in the state court, but was removed to the United States District Court when upon dismissal as against a resident defendant diversity of citizenship first appeared.

The plaintiffs sought damages for injury to farm lands on an island in the Little Tennessee river in Monroe county, Tenn., alleged to have been caused by the defendant's dams in North Carolina constructed in the river for the generation of energy in the defendant's hydro-electric plants in that state. The declaration was in two counts, the first charging interference with a ford giving access to the island, by increasing the flow of water in the channel, the second charging the defendant with depriving the plaintiffs of the alluvion, sediment, and silt which the usual spring overflows had in the past deposited on the island to the enrichment of its soil, but which were no longer received when the floods were controlled by the defendant's dams.

At the trial the second count of the declaration was withdrawn from the jury and a verdict thereon directed for the defendant. A motion by the latter for peremptory instructions in its favor on the first count was denied, and verdict and judgment against it followed. The main appeal is by the defendant from the judgment, and the cross-appeal is by the plaintiffs from the direction of a verdict against them on the second count.

We encounter first a question with respect to the Tennessee statute of limitations (Shannon's Code, §§ 4466, 4470), which provides that actions for injuries to personal or real property shall be commenced within three years after the cause of action accrues. To the defendant's plea of the statute, the plaintiffs countered with a replication setting forth that the defendant is a foreign corporation, was never licensed to do business in Tennessee, and not present within the state so as to be served; that the statute was thereby tolled, and so not available as a defense. The court overruled the plea, and we are unable to say that this was error. The defendant was engaged in various activities in Tennessee, no one of them conclusive in establishing its presence there

for purposes of suit during such period as would prevent the tolling of the statute. Moreover, its activities were so interwoven with those of allied corporations that it is difficult to say where the defendant's operations ended and the activities of allied corporations began. Moreover, when suit was started, the defendant filed a plea in abatement denying its presence within Tennessee to the extent that it was amenable to process therein. It is true that this plea was withdrawn, but we see no error in receiving it as evidence. While not conclusive, it was entitled to consideration. The fact that the defendant was in Tennessee when service was made is not conclusive upon the fact of its presence in the state for a sufficient time to prevent the tolling of the statute, and our decision in Baltimore & Ohio R. Co. v. Reed, 223 F. 689, does not so hold. Corporations as individuals may be present within the state at one time and not at another. The question is not whether the defendant may plead the bar of the statute, but whether under the evidence the plea can be sustained. We think that upon the whole record its activities fall short of establishing its presence within Tennessee during the period of limitation within the test laid down in Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710, or in International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479.

■ Of the errors complained of in the main appeal, it is sufficient to consider only that which relates to the denial of the request for peremptory instructions by the defendant. The Little Tennessee river, as · it passes the plaintiff's island, is a navigable stream. This is clearly established by the evidence. Steamboats have been known for many years to pass up the river beyond the island, and maps of the War Department received in evidence indicate its navigability. The Court of Appeals of Tennessee in Bank of Vonore v. Aluminum Co. of America,[1] decided June 23, 1934, has so designated it at a point not very far from the plaintiffs' land, and the Supreme Court of Tennessee has refused to review the case. That the river at the point here involved may not be navigable at all seasons and under all conditions is not, we think, material.

■ The Supreme Court of the United States in United States v. River Rouge Improvement Co., 269 U. S. 411, 418, 46 S. Ct. 144, 146, 70 L. Ed. 339, probably stated the extreme limits of the rights of riparian owners when it declared "it is well settled that in the absence of a controlling local law otherwise limiting the rights of a riparian owner upon a navigable river, Shively v. Bowlby, 152 U. S. 1, 40, 14 S. Ct. 548, 38 L. Ed. 331, he has, in addition to the rights common to the public, a property right, incident to his ownership of the bank, of access from the front of his land to the navigable part of· the stream, and when not forbidden by public law may construct landings, wharves or piers for this purpose." It would seem to follow from this that even in the absence of local law limiting the rights of a riparian owner *no right can be asserted in a navigable channel.* It is clear, however, that in Tennessee the riparian owner on a navigable stream owns only to the low-water mark. Goodall v. Herbert & Sons, 8 Tenn. App. 265; Parmelee v. Herbert & Sons, 13 Tenn. App. 101; Stanton v. Herbert & Sons, 141 Tenn. 440, 211 S. W. 353; Bank of Vonore v. Aluminum Co. of America, supra. The Parmelee Case is clearly in point, and the Bank of Vonore Case identical. In the former the defendants removed sand below low-water mark in the Cumberland river, destroying the plaintiff's bathing beach. It was held that the injury was not actionable. The Bank of Vonore Case involved the use of the bed of the Little Tennessee river as a ford for access to an island therein and the same result followed. We think the motion for directed verdict should have been granted.

■ In the second count of the declaration it was alleged, and at the trial proofs were introduced tending to show, that from time immemorial the freshet flood waters of the Little Tennessee river periodically flowed over part or all of the plaintiffs' island, refreshing the soil thereon and depositing sediment and silt which greatly increased its fertility; that since the building and operation of the defendant's dams, these flood waters were controlled and no longer produced such benign

---

[1] Not for publication.

result. This count was withdrawn from the jury on the ground that the flood waters were "errant" or "enemy" waters upon which all had the right to war, on the ground that even though not errant waters, they were the result of extraordinary or unprecedented floods not regularly to be expected, and on the still further ground that title cannot vest in future deposits which may never be received upon the land of the lower riparian owner.

It is well settled that stream water which does not leave the high-water channel of the river, or which while overflowing its banks returns to the stream, is not errant water. It is now conceded by the defendant that the law applicable to surface waters which leave the river channel not to return to it is not applicable to the present case. The defendant, however, contends that the only waters which deposited silt and sediment on plaintiffs' land were extraordinary or unusual floods and not annual floods or freshets, that they were therefore destructive common enemies in which no property owner could acquire a vested right. It is, however, well settled that floods are ordinary which are well known to occur occasionally through a period of years, though at no regular intervals. Gould, Waters, § 211; Still v. Palouse I. & P. Co., 64 Wash. 606, 117 P. 466; Carriger v. East Tennessee, V. & G. R. Co., 7 Lea (Tenn.) 388; Cairo, V. & C. R. Co. v. Brevoort (C. C.) 62 F. 129, 25 L. R. A. 527, 533. We think the proofs offered come well within the stated rule.

It is said that "one of the most valuable of the rights of the riparian owner is the right to preserve his contact with the water by appropriating the accretions which form along his shore." Farnham, Waters and Water Rights, § 69. These accretions include sediment and silt, and we see no distinction in principle between sediment and silt deposited along the shore and that deposited on the land. "The riparian right to future alluvion is a vested right." St. Clair County v. Lovingston, 23 Wall. 46, 68, 23 L. Ed. 59. The right to have flood waters overflow the riparian land has been recognized by many courts. Herminghaus v. Southern California Edison Co., 200 Cal. 81, 252 P. 607; Still v. Palouse I. & P. Co., supra; Longmire v. Yakima H. I. & L. Co., 95 Wash. 302, 163 P.

782; Miller & Lux v. Madera Canal & Irrigation Co., 155 Cal. 59, 99 P. 502, 22 L. R. A. (N. S.) 391, 397. We think the rule in Tennessee is not contra. Parmelee v. Herbert & Sons, supra, and Stanton v. Herbert & Sons, supra, are relied on by the defendant, but these cases deal with the right to accretions formed in the bed of a navigable stream and not upon the lands of the riparian owner, and in such accretions there is, of course, no property right, as we have already indicated.

We think the court was in error in withdrawing the second count of the declaration from the jury. There were questions of fact to be submitted, including the character of the flood waters as ordinary or extraordinary, whether their control by the defendant substantially injured the plaintiff's land, and based on findings thereon, the question of damages, which, however difficult of ascertainment, may yet upon adequate proofs be within limits ascertainable. Assuming that there will be a retrial with respect to the second count of the declaration, it must be added that liability in the first instance must be based upon a primary finding of unreasonable use or control by the defendant of the flood waters of the Little Tennessee river. Without such preliminary finding by the jury no liability exists. As we understand the law laid down in many cases, the right of each riparian owner qualifies that of the other, and the question always is not merely whether the lower proprietor suffers damage, but whether under all of the circumstances of the case the use of the water by one is reasonable and consistent with its enjoyment by the other. The test is always imposed with regard to the equality of right between the several riparian owners. If the injury to one is merely incidental to the reasonable enjoyment of the common right by the other, there can be no redress. The law in this respect is exhaustively reviewed by Judge Cooley in Dumont v. Kellogg, 29 Mich. 420, 18 Am. Rep. 102, cited and approved by the Supreme Court of Tennessee in Cox v. Howell, 108 Tenn. 130, 65 S. W. 868, 58 L. R. A. 487. Equally exhaustive and persuasive is the discussion of the court in Elliot v. Fitchburg R. Co., 10 Cush. (Mass.) 191, 193, 196, 57 Am. Dec. 85, cited and approved by the Supreme Court of the United States in Kansas v. Colo-

rado, 206 U. S. 46 at page 103, 27 S. Ct. 655, 51 L. Ed. 956.

We do not overlook the motion of the cross-appellee for the dismissal of the cross-appeal. The delays there asserted in the giving of the bond and the docketing of the appeal are not jurisdictional, and in any event were cured before the motion to dismiss was filed. It is doubtful that citation is required in a case where the cross-appellee is already in court invoking its jurisdiction, but in any event it may be waived, not being jurisdictional [In re Cannon, 31 F.(2d) 388 (C. C. A. 7)] and may not be too late before the court takes final action [Railroad Equipment Co. v. Southern Ry. Co., 92 F. 541 (C. C. A. 6)]. We note also the contention that because the island property belonged severally to the two Clarks, and not jointly, that a joint action in tort for injury to it would not lie. The court below, however, admitted evidence tending to explain the interest of the two plaintiffs as joint in fact. In view of the withdrawal of the second count from the jury, the question does not here arise and upon retrial may not appear.

The judgment below is reversed, and the cause remanded for new trial in conformity herewith.