ALBANY,
January, 1819.

LEYMAN
v.
ABEEL.

LEYMAN *against* ABEEL.

*Where one of the patentees of a tract of land devises his undivided interest in the patent to his two sons, and also devises to all his children a right of common in his undivided lands in the patent, the latter devise is not inconsistent with the former, and is valid; and upon a partition of the patent between the representatives of the original patentees, the right of common is restricted to the interest of the devisor.*

*By the statute of descents, incorporeal hereditaments descend to all the children, &c. of the intestate, in the same manner as lands and tenements, and not, according to the rule of the common law relative to coparceners, to the eldest alone, on making an allowance to the other coparceners out of the inheritance descended, or if there were nothing* out of which an allowance could be made, to all the coparceners to be enjoyed alternately; and, therefore, a conveyance of a right of common by the eldest tenant in common, or parcener, is void, but all the tenants must join in the grant.

The grantee in fee of a right of common, in gross, and without number, may aliene it, and it descends to his heirs; but it cannot be aliened in such a way as to give the entire right to several persons to be enjoyed by each separately. And where it descends to several persons as tenants in common, or *parceners, it seems* that it cannot be divided between them, but that there must be a joint enjoyment of it : nor can one of the tenants alone convey a right in the common, though they may jointly aliene their right.

THIS was an action of trespass for breaking and entering the plaintiff's close, being lot No. 7, in the subdivision of lot No. 14, in the second division of the *Catskill* patent.

In 1688, the tract of land, called the *Catskill* patent, was granted to *Martin G. Van Bergen,* in fee, and *Elizabeth Van Dyck,* for life, remainder to her three children by her former husband, *S. Salisbury,* in fee. In 1758, *Garrit Van Bergen,* the eldest son and heir of the patentee, *M. G. Van Bergen,* died, leaving five children and a grandchild, who was the daughter of one of his children, then deceased, and having made his will, by which he devised certain specific lots of land in the *Catskill* patent to his eldest son, *Martin G. Van Bergen,* and his other son, *William Van Bergen,* and gave them each an undivided moiety, in common, of his right in the undivided lands in the patent, reserving certain privileges, therein afterwards mentioned. He then devised certain lots of land to his three daughters, *Deborah,* the wife of *John Pierson, Nelly,* the wife of *David Abeel,* and *Ann,* the wife of *Willhelmus Van Bergen,* and also to his grand daughter, *Anna Bronk.* The will then contained a clause, by which he devised to his five children " free liberty of cutting wood, and taking of stone, out of any of his undivided lands comprehended in the patent, or patents of *Catskill,* commonly called the *Catskill* patent, with free egress and regress to and from the same, with sleds, carts, &c., to them and their heirs for ever, in common."

In 1767, the residue of the patent was divided between the claimants under the original patentees, and afterwards on a division between *Martin G.* and *William Van Bergen,* No. 14, the lot containing the premises in question, fell to

the share of the latter. In 1794, *W. Van Bergen* devised lot No. 14 to his grand daughters, *Mary Van Bergen*, and *Catharine Van Bergen*, in fee ; who, in 1795, conveyed the same to the plaintiff, and six other persons, in fee, " subject to such right as *Nelly*, the wife of *David Abeel*, her heirs and assigns, the heirs or assigns of *Deborah*, the wife of *John Pierson*, and the heirs and assigns of *Ann Van Bergen*, deceased, or any of them, now have, (if any such they have,) of cutting, taking, and carrying away wood and stone, in and out of the same, by virtue of the last will and testament of *Garrit Van Bergen*, deceased, late father of the said *Nelly*, *Deborah*, and *Ann*." In *May*, 1798, the grantees in the last-mentioned deed made partition, by which the premises in question fell to the share of, and were released to, the plaintiff.

*Nelly Abeel* died about the year 1809, and *David Abeel*, her husband, about the year 1812. They left four children, of whom *Anthony Abeel* was the eldest. In *April*, 1817, *Anthony Abeel* conveyed his right to cut wood and carry away stone to the defendant, who, claiming under that conveyance, entered the premises in question, and cut and carried away five loads of fire wood.

The case was submitted to the Court without argument.

SPENCER, J. delivered the opinion of the Court.

1. There can be no doubt that the devise from *Garrit Van Bergen*, in 1758, invested his five children, of whom *Nelly Abeel* was one, with the right to cut wood and take stone in his undivided lands, in the *Catskill* patent; and this right was a right in fee, it having been devised to the devisors and their heirs for ever ; nor is it inconsistent with a prior devise of the lands in that patent, held in common, to his two sons.

2. Upon the division of the patent, the right of commons was limited to, and followed the divided interest. (10 *Johns. Rep.* 414.)

3. *Abeel* and his wife died in 1810 and 1811, leaving four children, of whom *Anthony* was the eldest, and under him the defendant claims, by a deed conveying the right of com-

ALBANY,
January, 1819.

LEYMAN
v.
ABEEL.

ALBANY,
January, 1819.

LEYMAN
v.
ABEEL.

mon, which *Anthony* derived by inheritance from his mo-
ther.

The real questions in this case are, 1st. To whom did the
right of commons descend ? and, 2d. Was it such an interest
as would pass by descent ?

It seems to be taken for granted, that *Anthony Abeel* is
the heir at law of his mother, to the exclusion of the other
three children. This is a mistake. Under our statute re-
gulating descents, (1 *N. R. L.* 52.) if any person dies seised
of any lands, tenements, or hereditaments, without devising
the same, and leaving more than one person, lawful issue, in
the direct line of lineal descent, and all of equal degree
of consanguinity to the person so seised, the inheritance is
to descend to such persons, as tenants in common, in equal
parts, as if they were all daughters of the person so seised.
Hereditaments are corporeal or incorporeal ; the latter in-
cludes commons. The right, then, of *Nelly Abeel*, descend-
ed to all her children.

*Coke*, (*Co. Litt.* 164. *b.*) states the law to be, that a *pis-
charie uncertain*, or a common *sans nombre*, cannot be di-
vided between *coparceners ;* for, he says, that would be a
charge to the tenant of the soil. In the case between the
Earl of *Huntington* and Lord *Mountjoy*, *Mich.* 24 and 25
of *Eliz.* (*Godbolt*, 17.) the facts were, that Lord *Mountjoy*,
seised of the manor of *Canford*, in fee, bargained and sold
the same to one *Brown*, in fee, with a proviso, and *Brown*
covenanted with *Mountjoy*, his heirs and assigns, that he,
his heirs, and assigns, might dig for ore on the lands, and turf
also, for the making of alum ; and it was resolved, among
other points, that Lord *Mountjoy* might assign his whole in-
terest to one, two, or more ; but if there be two or more,
they could make no division of it, but must work together with
one stock, and, therefore, if such an uncertain inheritance
descend to two coparceners, it cannot be divided between
them.

*Shephard*, (*Touchs.* 238.) says, that if a common in gross,
and without number, be granted to a man and his heirs, it
seems this is not grantable over to another. This opinion
may be questioned ; but the decision in the case of Lord
*Mountjoy* is undoubted law ; for the right to cut wood and

take stone, is intended to be a personal right, and although descendible and alienable, it never could be enlarged by the grantor in such a way as to defeat the intention of the devisor, by imparting the entire right to several persons, to be enjoyed by each.

*Coke* (*Co. Litt.* 165. *a.*) puts the case, by inquiring what shall become of their inheritances when they descend to coparceners. He says, it appeareth, that regularly the eldest shall have the reasonable *estovers, common* of *pischary corrodies* uncertain, &c., and the rest shall have a contribution, that is, an allowance of the value in some other of the inheritance. He inquires, if the ancestor left no inheritance, to give any thing in allowance, what contribution or recompence shall the younger coparceners have ? He answers, that if the common be uncertain, then one coparcener shall have it for a time, and the other for the like time, whereby no prejudice can grow to the owner of the soil.

This, however, I apprehend, would not be the case here; since our statute of descents; for it has been already shown, that the right devised to *Nelly Abeel* is an incorporeal hereditament, and both species of hereditaments must descend to all the coparceners; so that, if it appeared in this case, which it does not, that the common ancestor, *Nelly Abeel,* transmitted other inheritances; still our statute has produced an alteration in the common law, that the eldest shall take the whole common, making a recompence to the younger coparceners.

The consequence is, that *Anthony Abeel* could not, alone, aliene this right of common, and the defendant could acquire no right to enter and cut wood on the lands subject to the right of common; he is, therefore, a trespasser, and the plaintiff is entitled to recover.

Judgment for the plaintiff.