R. M. GOODALL v. T. L. HERBERT & SONS, et al.

Middle Section.   May 5, 1928.

Petition for Certiorari denied by Supreme Court, December 22, 1928.

C. H. Rutherford and Albert A. White, of Nashville, for plaintiff in error, Goodall.

Manier & Crouch, Charles C. Trabue and Thos. H. Malone, all of Nashville, for defendants in error, Herbert & Sons, et al.

Jordan Stokes, Jr., of Nashville, Amicus Curiae.

CROWNOVER, J.   This was an action to recover damages for the dredging and removal of sand and gravel from a sand bar in

Cumberland River just below Nashville. The plaintiff's declaration has four counts: (1) one on the facts of the case; (2) one in assumpsit for money had and received to the use of the plaintiff; (3) one in trover for the conversion of the sand and gravel; and (4) one in trespass.

The defendants pleaded the general issue and the Statute of Limitations of three years.

The plaintiff took a nonsuit as to defendant W. G. Bush & Company, and the jury returned a verdict for defendant T. L. Herbert & Sons. The plaintiff's motion for a new trial was overruled. To all of which he excepted, appealed in error to this court, and has assigned fifteen errors, which when summarized raise four propositions: (1) That there was no evidence to support the verdict; (2) that the court erred in excluding the testimony of a former Government Engineer; (3) that the court's charge was totally erroneous; and (4) that the judgment should be reversed on account of the misconduct of the jury.

The facts necessary to be stated are that the plaintiff Goodall on February 27, 1920, purchased three small tracts of land aggregating twenty-three acres on the south bank of the Cumberland River in Davidson County, and it is contended that the property lines and boundaries of one of the tracts cover a part of a sand bar in Cumberland River near the location of the old pest house, a short distance below the City of Nashville, as the deed calls "to run with the extreme low watermark."

Cumberland River is navigable. In 1904 the United States Government constructed locks and dam in the river for the purpose of navigation, and raise the pool level of the water at this location 6.5 feet on the gauge, which is 366.17 feet above sea level at Mobile, and which made the general average low water mark at this point 13.6 feet on the gauge at Nashville for the past twenty years.

Defendant Herbert & Sons dredged and removed large quantities of sand and gravel from this sand bar during high waters, after plaintiff Goodall purchased the land above mentioned, before suit was brought, and Goodall insists that he was the owner of the sand and gravel, for which this action was brought. The case was tried by the judge and jury. The jury returned a verdict in favor of the defendants. Plaintiff's motion for a new trial was overruled and he has appealed in error and has assigned errors, which are in substance as above stated.

We think the first assignment of error, that there is no evidence to support the verdict, is not well made, for there is evidence that the present ordinary low watermark covers the sand bar in controversy. Under the rule laid down in Elder v. Burrus, 6 Humph., 358; Nance v. Womack, 2 Shan. Cas., 202; Goodwin v. Thompson,

15 Lea, 209; Stanton v. Herbert & Sons, 141 Tenn., 453, 211 S. W., 353, and other cases, the owners of land on navigable streams have title to ordinary low watermark when their title papers call to run with the river. "Ordinary low watermark is the usual and common or ordinary stage of the river, when the volume of water is not increased by rains or freshets, occasioned by melted snow on one hand, or diminished below such usual stage or volume by long continued drought to extreme low watermark."

. There was some proof that the bar was connected with the bank, and there was proof that it was cut off by a slough and submerged at the present ordinary low watermark. The jury having found in favor of the defendants we are bound by the verdict, and this assignment must be overruled.

We think that the second assignment of error, that the court erred in excluding the testimony of a former Government Engineer to the effect that when the United States Government constructed the locks and dam it only condemned, took and paid for the land submerged by the river at pool level, is not well made, for several reasons, first, because it was irrelevant, as what the United States Government actually did could have no bearing on this case; and second, the admission of such irrelevant testimony would have been prejudicial error, and it could not have aided the jury in arriving at a proper verdict. The Government was liable to plaintiff for the invasion of his property, that is, that part actually submerged at ordinary low watermark as raised by the dam and not at pool level, as will be more fully shown in this opinion under the next assignment of error. This assignment must be overruled.

The third proposition, which covers assignments of error numbers 3 to 14 inclusive, to the effect that the court's charge was totally erroneous, in that, he charged that plaintiff could not recover for sand and gravel taken from his boundary below what is shown to be the present ordinary low watermark, regardless of pool level, is not well taken. The twelve assignments go to different phases of the one proposition, it being strenuously insisted that the United States Government condemned and took only that portion of the sand bar submerged at pool level; that there was a vast difference between pool level and the present ordinary low watermark as raised by the dam, and that the charge deprived the plaintiff of a large portion of his sand bar, which had not been condemned or paid for by the United States Goverenment, or by any one else, and which was not taken from him by the forces of nature but by human agencies.

The fallacy of this argument will be readily seen by an examination of the cases of the United States v. Great Falls Manufacturing Co., 112 U. S., 645, 28 L. Ed., 848; United States v. Lynah, 188 U.

S., 445, 47 L. Ed., 539; United States v. Cress, 243 U. S., 328, 61 L. Ed., 753; Coleman v. United States, 181 Fed., 599; and Stanton v. Herbert & Sons, supra. Where the United States Government erects locks and dams in the aid of navigation, which cause the overflow of one's land by permanent back water, it is a direct invasion which amounts to a taking, for which the owner is entitled to reasonable compensation, and "when the amount awarded as compensation is paid, the title, the fee with whatever rights may attach thereto, passes to the Government, and it becomes henceforth the full owner." See United States v. Lynah, supra, and United States v. Cress, supra. In such cases the proposition of "human agency" cannot affect the right of recovery. These cases hold that when the Government erects locks and dams and there is a physical invasion and a practical ouster of possession, it is a taking of the land for public uses, and the Government is under implied contract to make just compensation therefor.

The question whether the overflow of lands constitutes "a taking" within the constitutional provision, has been discussed in several cases, such as United States v. Lynah, supra; Manigault v. Springs, 199 U. S., 473, 50 L. Ed., 274; Bedford v. United States, 192 U. S., 217, 48 L. Ed., 414; Mills v. United States, 46 Fed., 738, 12 L. R. A., 673, and it has been held that where the Government places dams or other obstructions in such a manner as to hinder its natural flow and to raise the water so as to overflow plaintiff's lands and cause a total destruction of their value, it must be regarded as an actual appropriation of the land, and creates an obligation upon the Government to make compensation therefor.

The rule, as gathered from these cases, is that where there is a practical destruction, or material impairment of the value of the land, there is a taking which demands compensation, but otherwise where the plaintiff is merely put to some extra expense in warding off the consequences, as there can be no recovery of damages for a consequential injury to property not amounting to a taking and for which recovery could be had only in an action of tort. In order that a flooding of lands may constitute "a taking" it must be not only a direct physical invasion of private property, but must also act as an actual ouster and cause a practical destruction of the value of the land actually overflowed a greater part of the time. Occasional overflows is not sufficient for a recovery. See Coleman v. United States, supra.

It was held by our supreme court in the case of Stanton v. Herbert & Sons, supra, that the plaintiff was entitled to recover damages in that case for all sand and gravel taken above the present ordinary low watermark, which absolutely fixed the rule on this question in

this case, and the plaintiff is not entitled to recover for said sand and gravel taken below the present ordinary low watermark, as charged by the court.

The proof shows that the valves in the dam are kept closed and the water runs over the dam practically all the time, hence there can be no question of "the taking" of all land submerged at the present ordinary low watermark.

The next contention is that the court erred in his charge that if the sand bar was permanently covered by water at ordinary low watermark as raised by the dam, and afterwards a bar appeared above the ordinary low watermark as raised not connected to the bank by natural accretions, the plaintiff did not acquire title to the sand bar under his deed and could not recover; that this charge disregarded the well-settled rule that when land is lost by submergence, it may be regained by reliction, and that the fact that land is swept away by avulsion, or otherwise becomes submerged, does not extinguish the owner's title, for, when the land reappears above the water there is a restoration of title and right of possession, citing Stockley v. Cissna, 119 Tenn., 135, 171-177, 104 S. W., 792; 119 Fed., 812, 831; Keel v. Sutton, 142 Tenn., 341, 346, 219 S. W. 351; St. Louis v. Rutz, 138 U. S., 226, 34 L. Ed., 941. We think that this contention is not well made, for under the Lynah and Cress cases above cited, after the award is paid the title and fee pass to the Government and it becomes henceforth the full owner of that portion invaded and submerged; hence, after the owner is paid for the land submerged and taken, this extinguishes his right of reclamation of title and right of possession by reliction, avulsion or other process whereby the land reappears above ordinary low watermark, except by accretion, because he has nothing to reclaim. But of course this does not affect his title to that above the present ordinary low watermark as raised by the dam at the time of the invasion. See Stanton v. Herbert & Sons, supra. There are twelve of these assignments of error on the different phases of this proposition, and it would make this opinion too long for us to discuss each proposition at length. We have examined each one closely and are of the opinion that none of them is well made, and they are therefore overruled.

The fourth proposition, which is raised by the fifteenth assignment of error, is that the court erred in not granting a new trial because of the misconduct of the jury, in that the juror Buie stated to the juror Thorn in the presence of other jurors that he had known the sand bar forty years ago and that there was a slough near the bank. This question was raised before the trial judge and proof was submitted, and the evidence was conflicting; but the trial judge made the following finding:

. "The motion for a new trial, based on misconduct of the jury is not sufficient to justify the court in setting aside this verdict. The juror Thorn and juror Buie were men well up in years and were reminiscing as to the river forty years before this lawsuit was instituted. Thorn remarked something about fishing off of this bar, and Buie stated that he had known it for forty years before and that there was a slough near the bank.

"The matters which they discussed were too remote and under all the evidence offered on the motion for a new trial, and affidavits submitted, there is nothing to warrant the setting aside of this verdict, because of what was said by the juror Buie."

We have thoroughly gone over the record on this proposition and in view of the finding of fact by the trial judge, we are of the opinion that this assignment of error is not well made. The existence or nonexistence of a slough forty years ago, is immaterial because the evidence showed that the bar was submerged at the present ordinary low watermark. The statement was made in a conversation with another juror as to conditions existing forty years before the lawsuit, and not as an argument or for the purpose of influencing the verdict in the instant case, and after a careful review of the whole record on the question, we are satisfied that the statement did not influence the verdict of the jury in any respect, and the assignment must therefore be overruled.

It results that all the assignments of error must be overruled and the judgment of the lower court affirmed. The cost of the appeal is adjudged against plaintiff in error and the surety on the appeal bond, for which execution may issue. .

Faw, P. J., and DeWitt, J., concur.