MRS. ELIZABETH STANTON PARMELEE, et al. v. T. L. HERBERT & SONS, et al.

Middle Section. September 20, 1930.

Petition for Certiorari denied by Supreme Court, May 2, 1931.

Petition for Certiorari denied by U. S. Supreme Court, February 15, 1932.

Jordan Stokes, Jr., Jordan Stokes, III, and J. C. R. McCall, Jr., all of Nashville, for appellants, Mrs. Parmelee et al.

Charles C. Trabue, Manier & Crouch, and Thomas H. Malone, all of Nashville, for appellees, Herbert & Sons et al.

CROWNOVER, J. This was a suit to enjoin defendants from invading complainants' riparian rights by dredging and taking sand and gravel from Hill's Island in the Cumberland River, about twenty miles above Nashville, and to recover damages: (1) for the value of the sand and gravel taken and appropriated above pool level, and, (2) for the destruction of complainants' bathing beach and accretions below low water mark.

The Chancellor sustained defendants' demurrer and dismissed the bill on the ground that complainants' immediate vendor had reserved the right to remove sand from the island for ten years, and had assigned that right to the defendants. Complainants appealed to the Supreme Court.

The Supreme Court held that the right reserved was an incorporeal hereditament, assignable but not divisible, and reversed the decree of the Chancellor, in 1918, in a written opinion published in 141 Tenn., 440, 211 S. W., 353, and remanded the cause to the Chancery Court of Davidson County for a new trial. The facts of the case were stated in that opinion.

Mrs. Stanton has since married John H. Parmelee, who was made a party complainant to this suit.

On remand the complainants filed amended and supplemental bills, alleging that defendants had ignored the decree of the Supreme Court, and had dredged and removed considerable sand and gravel, not only in 1918 but also in the years 1924 and 1925, which caused slip-ins or landslips of sand around the shore of the island, resulting in the destruction of the bathing beach and the formation of accretions, greatly to complainants' damage, and they renewed the application for an injunction to prohibit the further dredging about the island, and asked for damages.

Defendants answered and denied that they had dredged or removed any sand and gravel above ordinary low water mark, or had caused the slip-ins or landslips complained of, or had damaged complainants' riparian rights, and denied that complainants had any right to a bathing beach and to accretions below ordinary low water mark.

Considerable proof was taken by depositions, after which complainants demanded a jury, and oral evidence was introduced at the trial, which consumed eight weeks.

Eight issues were submitted to the jury, which, when summarized, were:

(1) Did defendants dredge any sand and gravel from the island above ordinary low water mark during the years 1918, 1924 and 1925, and if so, what were the cubic yardage and market value?

(2) Was the island damaged by slip-ins or erosions caused by defendants' dredging in those years, and what was the amount of the damage?

After the case had been argued by several of the attorneys, complainants tendered to be submitted to the jury three other issues on propositions, (1) whether there was a bathing beach; (2) whether it was damaged by the dredging; and, (3) the amount of damages, if any. The Chancellor refused to submit these issues, because they were immaterial and were offered too late.

The jury answered the other issues in the negative.

The complainants' motion for a new trial and for a judgment non obstante veredicto were overruled by the Chancellor, and the bill was dismissed. Complainants appealed and have assigned sixty-three errors, which, when summarized, are, that the Chancellor erred:

(1) In the admission and exclusion of testimony.

(2) In submitting the issues to the jury, and in refusing to submit the issues tendered by complainants.

(3) In his charge to the jury in defining both ordinary low water mark and the channel of the river, and in charging that complainants could not recover for sand and gravel dredged below ordinary low water mark and for the destruction of the bathing beach and accretions below ordinary low water mark, and in stating the measure of damages pertaining thereto; and in refusing to charge complainants' special requests on these and other propositions.

(4) In refusing to allow the procedendo from the Supreme Court to be read to the jury; and in not permitting complainants to amend their amended and supplemental bills so as to set out said procedendo.

(5) In refusing to allow the decree and the injunction granted in the case to be read to the jury.

(6) In holding that there was evidence to support the verdict.

(7) In overruling the motions for a new trial and for a judgment disregarding the verdict of the jury.

The determinative propositions raised by the assignments of errors, are, that the Chancellor erred in his charge to the jury: (1) That complainants could not recover for sand and gravel, accretions to the island, removed out of the bed or channel of the river below ordinary low water mark, and in his definitions of the channel of the river and ordinary low' water mark; (2) That complainants could not recover damages (a) for the destruction of a bathing beach caused by the dredging and removal of sand and gravel below ordinary low water mark, or (b) for the dredging which prevented the formation of future deposits of accretions.

We are of the opinion that the issues submitted were proper, under the pleadings of the case, and that the three issues last tendered were properly refused because they were covered by those already submitted, and were therefore immaterial; and that there were no errors in the charge of the court.

The proposition of liability for the dredging and removal of sand and gravel from the channel of the river below ordinary low water mark, was discussed by us in the case of Goodall v. Herbert & Sons, 8 Tenn. App., 265, and the authorities were there reviewed; hence, it is unnecessary for us to again review the law' on this subject. We are not going to depart from our former holding on the subject. Our Supreme Court, almost a hundred years ago, laid down the principle that individuals may own land to ordinary low water mark in navigable rivers, but the beds or channels of such rivers are owned by the public.

We held in the Goodall case that all land submerged in the channel or bed of the river at ordinary low water mark after the construction of locks and dams, must be regarded as being appropriated, which created an obligation upon the Government to make compensation therefor, and thereupon the original owner had no title thereto and had no right of action against those who dredged. It can make no difference that the War Department only paid them for land submerged at pool 'level, as that is a matter between the Government and the riparian owners.

· Of course, there is a vast difference between the invasion by water and the appropriation of the land taken on one hand, and mere damage done to land without submergence for the greater part of the time on the other hand. The Government will not pay for mere damages in consequence of improvement of navigation. Gibson v. United States, 166 U. S., 269, 41 L. Ed., 996; Cohen v. United States, 162 Fed., 364.

Ordinary low water mark, as defined by the Chancellor to the jury, is the usual and common or ordinary stage of the river since the building of the dam when the water is not increased by means of freshets or diminished by long continued droughts.

The channel of the river and the bed of the river ordinarily mean the same thing and cover the depression in the earth's surface in which the waters of the stream are confined and flow in its ordinary stages, unaffected by freshets or droughts. State v. Pulp Co., 119 Tenn., 47, 104 S. W., 437.

In Howard v. Ingersoll, 13 Howard, 381, 14 L. Ed., 189, Mr. Justice Curtis gave a more elaborate definition of the bank and bed of a river, which in effect is the same as that given by the Supreme Court of Tennessee. He says:

"The banks of a river are those elevations of land which confine the waters when they rise out of the bed; and the bed is that soil so usually covered by water as to be distinguishable from the banks, by the character of the soil, or vegetation, or both, produced by the common presence and action of flowing water. But neither the line of ordinary high water mark, nor of ordinary low water mark, nor of a middle stage of water, can be assumed as the line dividing the bed from the banks. This line is to be found by examining the bed and banks, and ascertaining where the presence and action of water are so common and usual, and so long continued in all ordinary years, as to mark upon the soil of the bed a character distinct from that of the banks, in respect to vegetation, as well as in respect to the nature of the soil itself. Whether this line between the bed and the banks will be found above or below, or at a middle stage of water, must depend upon the character of the stream. . . . But in all cases the bed of a river is a natural object; and is to be sought for, not merely by the application of any abstract rules, but as other natural objects are sought for and found, by the distinctive appearances they present; the banks being fast land, on which vegetation, appropriate to such land in the particular locality, grows wherever the bank is not too steep to permit such growth, and the bed being soil of a different character and having no vegetation, or only such as exists when commonly submerged in water."

To confine the channel or bed of the river to the thalweg would work a grave injustice to riparian owners whose lands are submerged, as it would result in practically confiscating all their land submerged most of the time between ordinary low water mark and pool level. The decisions cited by us in the Goodall case hold that the Government must pay for land thus invaded. When the Government constructs locks and dams it necessarily invades and sub-

merges, at ordinary low water mark above the dam, land in the pool that is not in the thalweg of the stream proper and confined to that part of the river bed where the boats travel, hence it will be seen that the position is not tenable. Our Supreme Court did not hold and did not intend to hold in its opinion in this case that the Government took only that land in the thalweg of the river submerged at pool level, and that complainants owned all the other land not submerged at pool level. None of the cases hold that the recovery for the land submerged is confined to the thalweg.

Having taken this position, it results that we hold that complainants cannot recover for damages to the bathing beach below ordinary low water mark.

The next proposition is whether complainants can recover damages for the dredging and taking of sand and gravel below ordinary low water mark, resulting in damage to the formation of future accretions, that is, have riparian owners a remedy for the protection of the right to accretions which extends to future deposits? Some of the text books and law encyclopedias say the better rule is that the right to accretions is a vested right existing against the State and its grantees and extending to future deposits. 45 C. J., 525 to 530; 1 R. C. L., 233-4; 27 R. C. L., 1098-1100; 3 Thompson on Real Property, sec. 2445; County of St. Clair v. Lovingston, 90 U. S., 46, 23 L. Ed., 59; Freeland v. R. R., 197 Pa. St., 529, 80 Am. St. Rep., 850. Which decisions have been followed by the courts of Maryland, Louisiana, Illinois, Iowa and perhaps other states. But the courts of several other states hold that one who acquires title to lands on navigable streams and waters obtains no vested right to possible future accretions. Eisenbach v. Hatfield, 2 Wash., 236, 26 Pac., 538, 12 L. R. A., 632; Taylor v. Underhill, 40 Cal., 471; Cohen v. United States, 162 Fed., 364; Western Pac. Ry. Co. v. Sou. Pac. Co., 151 Fed., 376, 399; Lyons v. United States, 26 Ct. Cl., 31, 44.

Notwithstanding the statements made in some of the text books that the former rule is perhaps the better one, we are of the opinion that the latter rule is sustained by the better reasoning.

In the case of the County of St. Clair v. Lovingston, supra, the United States Supreme Court said:

"The riparian right to future alluvion is a vested right. It is an inherent and essential attribute of the original property."

The controversy in that case did not relate to future alluvion, but was about alluvion then existing, and that statement was purely dictum.

The Court, in the case of Western Pac. Ry. Co. v. Sou. Pac. Co., 151 Fed., 399, said:

"We cannot think that the court meant to announce the doctrine that the right to alluvion becomes a vested right be-

fore such alluvion actually exists. The language so used was quoted from the language, also obiter, of Bullard, J., in Municipality No. 2 v. Orleans Cotton Press, 18 La., 122, 36 Am. Dec., 624, in which it was said, in substance, that, if the Legislature had attempted to declare that thereafter owners of tracts of land fronting on a river should no longer be entitled to any alluvion which might be formed, such act would be held unconstitutional, on the ground that the right to future alluvion is vested.

"In Pearsall v. Great Northern Ry. Co., 161 U. S., 646-673, 40 L. Ed., 838, the court quoted with approval from Cooley's Principles of Constitutional Law, 332, as follows:

" 'Rights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent, when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.' " Cooley's Constitutional Limitations, 8th Ed., 749; 4 Kent's Commentaries, 202.

The Supreme Court of the State of Washington, in the case of Eisenbach v. Hatfield, supra, said:

"But appellee claims that he has a vested right to future accretions to his land, and cites, as authority to sustain his position, the case of St. Clair v. Lovingston, 90 U. S., 23 Wall., 46, 23 L. Ed., 59. And the court in that case does say that the riparian right of future accretions is a vested right. But we are unable to see how one can have a present vested right to that which does not exist, and which may never have an existence. It seems to us that the more reasonable doctrine is announced in the case of Taylor v. Underhill, 40 Cal., 471 in which case the court says: 'The plaintiff as a riparian owner has also a right to accretions to his land, and it is said the claim of defendant will be a cloud upon his title to such accretions, but as yet there is no such property and there may never be. He cannot ask the court to interfere in advance to prevent a cloud being cast upon his title to that which may never have an existence.' "

The State in its sovereign capacity owns the beds of navigable rivers in trust for the public, subject to the United States Government's right to regulate navigation and commerce, and has au-

thority to establish rules of property with respect to riparian rights. Henry Ford v. Little Falls Fibre. Co., 280 U. S., 369, 74 L. ed., 483.

"The States have authority to establish for themselves such rules of property as they may deem expedient with respect to the streams of water within their borders, both navigable and non-navigable, and the ownership of the lands forming their beds and banks." United States v. Cress, 243 U. S., 316, 61 L. Ed., 746.

In Tennessee the riparian owner has title only to ordinary low water mark, which carries with it the right to accretions above ordinary low water mark. Nance v. Womack, 2 Shannon's Cases, 202; Posey v. James, 7 Lea, '98.

The bed of the stream is owned by the State, and the riparian owner has no title to alluvion until it arises above ordinary low water mark. It may never be his property. As it is in the bed of the river below ordinary low water mark, it is owned by the State. 45 C. J., 541; Wear v. Kansas, 245 U. S., 154, 62 L. Ed., 214.

It seems absurd to say that the riparian owner may enjoin its appropriation or recover damages for something that is not his and may never become his. Certainly if the riparian owner can claim only to ordinary low water mark he cannot lay claim to accretions below that mark. He cannot claim a sand bar down in the bed of a river not rising to the surface. 40 Cyc., 621; 45 C. J., 523; St. Louis, Iron Mountain & Sou. Ry. Co. v. Ramsey, 53 Ark., 314, 13 S. W., 931, 22 Am. St. Rep., 195, 8 L. R. A., 559.

Hence, we hold that he has no property in accretions below the surface at ordinary low water mark.

There is another reason why complainants cannot recover, and that is that the proof failed to show, and in fact it cannot be shown, whether the sand and gravel dredged were accretions to complainants' island which would finally result in the formation of alluvion to the island above ordinary low water mark, or would first attach itself to towheads out in the river and form another island which would not be the property of complainants. 45 C. J., 527-8; Hohl v. Iowa Central Ry. Co., 162 Iowa, 71-2, 143 N. W., 852.

But where alluvion has arisen above ordinary low water mark it becomes the property of the riparian owner, and he is entitled to the right of lateral support from adjoining lands by nature independently of grant or prescription. 2 Washburn on Real Property, 6th Ed., sec. 1296; 1 R. C. L., 380; 1 C. J., 1214. And where one dredges for his own private use, and causes a landslide or other damage to the island and its accretions above ordinary low water mark, he is liable for injuries thus caused, if his act is the proximate cause of the injury. Pomroy v. Granger, 18 R. I., 624, 29 Atl., 690; Murray v. Pannaci, 64 N. J. Eq., 147, 53 Atl., 595; Austin v. Hud-

son River R. R. Co., 25 N. Y., 334; Gillon v. Boddington, 1 Car. & P., 541, Ryan & M. 161.

The issues on whether defendants dredged any sand or gravel above ordinary low water mark, and whether the island was damaged by slip-ins and erosion, (which are broad and cover damages done to the riparian rights, to the bathing beach if a part of the island, and to the formation of alluvion by change in the current or otherwise), caused by the dredging, having been found by the jury for defendants, and there being evidence to sustain the verdict, it results that all the assignments of errors about the issues submitted and about the court's charge on these propositions and on his refusal to charge the special requests pertaining thereto, must be overruled.

The complainants contend that the decision of the Supreme Court in this case is the law of the case, to which we agree (Staub v. Sewanee Coal, etc., Co., 140 Tenn., 506, 205 S. W., 320), but the Supreme Court did not hold what they contend. We followed that decision in the Goodall v. Herbert case, as hereinabove set out, and for the reasons hereinabove stated we think complainants have misconstrued that opinion.

It is insisted that the charge to the jury that: "the sand and gravel at Hill's Island on that portion of the island covered by water at ordinary low water mark, are on towheads out in the river, but which are separated from the island by water at ordinary low water mark thereon, does not belong to the complainants," was error, as the intervening bar between the towheads and the island was above ordinary low water mark before the lock and dam were constructed, and therefore the complainants did not lose title to the towheads and the sandbar around the towheads which are above the present ordinary low water mark. We are of the opinion that there was no error in the Court's charge on this proposition, because the lock and dam were constructed in the year 1907, and complainants did not buy and acquire title to this island until 1911, and the deed shows that the island only was conveyed to them, and the description does not cover any towheads out in the river detached from the island, hence there is nothing in this contention. If complainants did not own the towheads and the sand bar around the towheads, they cannot recover for sand and gravel taken from them. But there was proof that the towheads and sand bar were below ordinary low water mark before the lock and dam were constructed.

The complainants contend that the Chancellor erred in the exclusion of a mass of correspondence that passed between Government employees of the United States Weather Bureaus at Washington and Nashville as to pool stage and as to what reading of the gauge constituted zero in lock water. The employees were not introduced or

offered as witnesses on the subject and the defendants had no opportunity for cross examination; hence we think there was no error in the exclusion of this testimony. This testimony was hearsay and irrelevant. What the officials of the United States Weather Bureau considered as low water mark or high water mark can have nothing to do with the issues involved in this case.

The complainants assigned that the Court erred in refusing to let the complainants read to the jury the procedendo from the Supreme Court which included the published opinion in this case, and in refusing to permit the complainants to read the decree granting the injunction, and in refusing to allow complainants to file an amendment to the amended bill so as to set out said procedendo in the pleadings. We are of the opinion that there was no error in excluding the procedendo, decree and injunction from the jury. It is not necessary in equity cases where issues are submitted to the jury that the judge should give instructions construing the pleadings for them where he clearly defines and states the issues submitted for the jury's determination. Shepard & Gluck v. Thomas, 147 Tenn., 338, 246 S. W., 836. We are also of the opinion that the Chancellor did not err in refusing to allow complainants to file an amendment to the amended bill, after the trial of the case had begun, as the amendment was immaterial and the matter was left to his sound discretion. Madison Land & Loan Co. v. Hammond, 2 Tenn. App., 423; Tenn. Fertilizer Co. v. International Agricultural Corp., 146 Tenn., 451, 471, 243 S. W., 81.

It is assigned that the court erred in excluding testimony of an engineer, McMurray, that in his opinion ordinary low water mark was 6.5 ft. on the gauge at Nashville in 1918 and was now 7 ft. on the gauge at Nashville. The Chancellor did not err in excluding this testimony, because it was immaterial. Nashville is in the pool below the one in which Hill's Island is located. Hill's Island is in the pool of Lock & Dam No. 2, which is nine and one-half miles above Nashville. Dam No. 3 is seventeen miles above Dam No. 2. Whether ordinary low water mark registered six, or ten, or fifteen, feet on the gauge at Nashville, was immaterial and did not aid the jury in determining the issues. The question was, whether the sand bar was submerged at ordinary low water mark when the dredging was done; hence it is immaterial what ordinary low water mark registered on the gauge at Nashville.

For the same reason, the admission of Dr. Parkins' testimony that extreme low water mark was six and one-half feet on the gauge at Nashville, was immaterial, and the admission of this testimony did not influence the jury in any respect.

It is assigned that the court erred in excluding the testimony of Allison that he paid $6,875 for a one-third interest in an eight year

lease of a bathing beach at Linton, several miles out from Nashville. We are of the opinion that the Chancellor did not err in excluding this testimony, for the reason that profits in bathing beaches, summer resorts, hotels, and similar property, is speculative, and depends upon the reputation of the place and whether the property has been properly advertised and whether it takes with the public. Such testimony, if admissible, should have very little weight with the jury, but in this instance, in view of the verdict of the jury on the issues, it was immaterial.

It is assigned that the Chancellor erred in admitting the testimony of Richardson as to the verbal assignment by Jordan to defendants of his right to dredge sand from the island, which right had been reserved by Jordan in his deed to complainants. We are of the opinion that this testimony was admissible for the purpose of bearing on the good faith of the defendants, in the event they were held liable in damages, but in view of the jury's verdict the admission of this testimony became immaterial.

It is assigned that the Court erred in admitting the testimony of Shepherd Green as to the effect of ice on boats, trees and banks of the Tennessee River, in which he stated that ice floes would grind off the banks like a grindstone, and nothing could hold it. We do not think that the Chancellor erred in admitting this testimony, because he was testifying about the effect of the forces of nature on the banks of the river, which showed his knowledge and experience about the matter.

It is next insisted that the Court erred in changing the issues after the testimony was introduced, so as to submit to the jury the issues whether defendants dredged any sand and gravel from the island above "ordinary low water mark" instead of "low water mark," as first submitted, it being insisted that as the Court had submitted the issues about taking sand and gravel above low water mark before the testimony was taken, he should not have changed them after the testimony was in, to "ordinary low water mark." The record shows that there was no objection made to this change at the time it was made. The statute is silent as to the time when issues should be formulated and submitted, hence it is left to the sound discretion of the Chancellor. It is not error to formulate and submit issues to the jury after the evidence has been introduced unless the record shows that the parties had been misled to their injury. Madison Land & Loan Co. v. Hammond, 8 Tenn. App., 423. There certainly was no error in the issues as finally submitted, and we cannot see that defendants have been injured thereby.

It is insisted that the Chancellor erred in charging the jury that "where admissions in an answer are relied on for a recovery, they must be taken with other cognate portions of the answer, because

complainants are not entitled to use the admissions of the defendants' answers to charge them without at the same time giving them the benefit of the matters therein, which was in discharge of any liability with which the admissions are coupled."

The defendants admitted in their original answer that they had dredged sand and gravel from the island above low water mark but they did not know the amount taken above or below low water mark, and that the banks of the island showed slip-ins but they denied that this was the result of respondents' acts; but in their answer to the amended and supplemental bill they stated:

"Defendants, however, do not admit, and did not admit in their original answer, that any digging was done by them on the island proper as distinguished from the towheads and sand bars (which complainants claim to be a part of the island), and neither did they admit, nor do they now admit, that any of this sand and gravel was dug above ordinary low water mark. The admissions in their answer were with respect to the extreme low water mark or zero claimed by the complainants in their said bill."

It is the insistence of the complainants that the defendants are estopped by their answer to deny that they did not dredge any sand and gravel above ordinary low water mark and that the slip-ins were the result of their dredging. There was no error in the charge of the Court. In Tennessee, pleadings, like other written instruments, must be given their fair and natural construction, and all the pleadings, including the bills and the answers to both the original and amended bills, should be looked to in order to ascertain the actual meaning of the answers. All of the several pleadings should be considered together as a whole. 49 C. J., 117; Grace v. Curley, 3 Tenn. App., 1. It will therefore be seen that there was no admission in the answer that the defendants had dredged any sand and gravel above ordinary low water mark and that the slip-ins were the result of their dredging, hence the charge was correct.

There was no error in the charge as to the burden of proof. The burden was on the complainants to show that the defendants took sand and gravel from the island above ordinary low water mark and that the dredging caused the slip-ins and that the dredging damaged the beach.

There was no error in the charge that if from a consideration of the evidence about slip-ins and erosions, two theories should arise, both equally reasonable and consistent, one that the slip-ins and erosions resulted from dredging done by the defendants, and the other that they resulted from natural causes in the river, such as the rise and rapid fall of the river, or high water or flood stages of the river, floating ice or debris, then the jury would not be au-

thorized to speculate as to which of the causes produced the injury, and it would therefore be the duty of the jury to answer the issues in the negative. We have recently had occasion to review the law on this proposition in an opinion in the case of DuPont Rayon Co. v. J. H. Roberson, Davidson County Law, 12 Tenn. App., 261, in which we held that ''where the injury may have resulted from one of several causes and defendant is liable for only one or more of them, but not for all, plaintiff must prove that a cause for which defendant is liable produced the injury.''

There was no error in the charge of the Court as to the measure of damages. He stated to the jury: ''There are two rules for computing damages, if you award damages under this issue. One, is to allow the value of the sand and gravel dredged and made ready for market, less the actual cost of dredging and preparing for market, and this rule is applicable where the injury was innocently done by mistake or inadvertence. The other rule is to allow the value of sand and gravel after being dredged and made ready for market, without compensation for dredging and preparing it for market. This rule is applicable where the facts show the injury to have been malicious or with full knowledge of the title of the injured parties, and in wilful disregard of their rights. If you find from a preponderance of the evidence that the complainants are entitled to damages, and you further find that the dredging above ordinary low water mark, was done by the defendants innocently, under the belief that they had the right under the deed from Jordan to complainants, to dredge where they did, or that it was done by inadvertence, you will apply the first named rule in the computation of damages. But if you find from a preponderance of the evidence that the dredging above ordinary low water mark was done maliciously, or with full knowledge of the title of the complainants, and in wilful disregard of their rights, then you will apply the second rule stated above.'' The Chancellor properly instructed the jury on the ''mild'' and ''harsh'' rules. Holt v. Hayes, 110 Tenn., 42, 73 S. W., 111; Staub v. Sewanee Coal, etc., Co., 140 Tenn., 505, 205 S. W., 320.

There was no error in the refusal of the Chancellor to charge complainants' special requests as to the intendments being in favor of complainants. But in view of the findings of the jury they became immaterial anyway.

The assignments that the Court erred in overruling complainants' motion for a judgment notwithstanding the verdict, must be overruled for the reasons hereinabove stated, and because there was evidence to support the verdict of the jury on the issues submitted.

It therefore results that we find no error in the judgment of the lower Court, and all of the assignments of errors must be overruled.

The judgment dismissing the bill will be affirmed. The cost of the cause including the cost of the appeal is adjudged against complainants and the sureties on their appeal bond.

Faw, P. J., and DeWitt, J., concur.